# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

MAR 3 1 2004

CLERK

**FOREST GUARDIANS,**

    Plaintiff,

vs.                                                             No. CIV 01-504 MCA/KBM-ACE

**UNITED STATES FOREST SERVICE,
HONORABLE ANN VENEMAN,**
in her capacity as Secretary of Agriculture
of the United States, and
**UNITED STATES FISH AND
WILDLIFE SERVICE,**

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's *Memorandum in Support of Second Motion for Review of Agency Action* [Doc. No. 56] filed on May 13, 2003. Having considered the applicable law, the parties' briefs, the Administrative Record filed on February 28, 2002, the supplements to the Administrative Record [Doc. No. 48, 62] filed on March 21, 2003, and June 27, 2003, and otherwise being fully advised in the premises, the Court denies the additional relief requested in Plaintiff's memorandum and affirms the agency decisions subject to judicial review for the reasons set forth below.



I.  **BACKGROUND**

In this action, Plaintiff challenges a ten-year grazing permit issued by Defendants on January 8, 1997, for the Copper Creek Allotment in the Gila National Forest in Catron County, New Mexico. Plaintiff's challenge is based on allegations that the livestock grazing authorized by this permit may adversely impact three species protected under the Endangered Species Act (ESA): the Mexican spotted owl, the spikedace, and the loach minnow.

The history of this action is recounted in further detail in the *Memorandum Opinion and Order* [Doc. No. 46] filed on December 31, 2002. In that *Memorandum Opinion and Order,* the Court ordered Defendants United States Forest Service (USFS) and the Honorable Ann Veneman to initiate consultation under Section 7 of the ESA, 16 U.S.C. § 1536, concerning impacts on the Mexican spotted owl, spikedace, loach minnow, and their critical habitat during the entire term of the 1997 grazing permit.

The Administrative Record was later supplemented to reflect the following actions. On January 17, 2003, Defendant USFS requested consultation with Defendant United States Fish and Wildlife Service (USFWS) pursuant to Section 7 of the ESA regarding the remaining term of the 1997 grazing permit for the Copper Creek Allotment. Defendant USFS determined that the Mexican spotted owl, the loach minnow, the spikedace, and their critical habitat are not likely to be adversely affected by livestock grazing under the terms and conditions set forth in the grazing permit and the consultation documents. [AR 560.]

On February 27, 2003, Defendant USFWS concurred in this determination, thus completing the informal consultation process under the ESA for the grazing permit issued in 1997. [AR 58.0.] After this consultation process was completed, Plaintiff was granted leave to amend its pleadings in order to challenge the agencies' consultation under Section 7 of the ESA, and the Court set a briefing schedule with respect to this challenge. [Doc. No. 50, 55.]

The *Memorandum Opinion and Order* [Doc. No. 46] filed on December 31, 2002, also ordered Defendants USFS and Veneman to modify the 1997 grazing permit for the Copper Creek Allotment as soon as possible so as to explicitly incorporate the standards and guidelines from the 1996 amendment to the Gila National Forest Plan into the permit and ensure the permit's consistency with the Gila National Forest Plan (as amended through 1996). These Defendants had not yet complied with this ruling at the time that Plaintiff filed its opening brief on May 13, 2003. Consequently, Plaintiff's opening brief also challenged Defendant USFS's failure, as of that date, to modify the 1997 grazing permit in order to achieve consistency with the 1996 Amendment to the Gila National Forest Plan as directed in the *Memorandum Opinion and Order* [Doc. No. 46] filed on December 31, 2002.

After Plaintiff's opening brief was filed, Defendants filed a Second Supplement to the Administrative Record which reflects the following additional actions. On June 3, 2003, Defendant USFS modified the 1996 grazing permit for the Copper Creek Allotment to include the Standards and Guidelines from the 1996 Amendment to the Gila National Forest

Plan and a number of conservation measures that resulted from the ESA consultation process mentioned above. With these modifications, Defendant USFS also determined that the 1997 grazing permit was consistent with the Gila National Forest Plan (as amended in 1996) as required by the National Forest Management Act (NFMA), 16 U.S.C. § 1604(i). [AR 61.0.] On June 19, 2003, Defendant USFS found that conditions on the Copper Creek Allotment did not meet the standards identified in the grazing permit modification dated June 3, 2003, and ordered that all cattle be removed from that allotment. [AR 69.0.]

## II.  ANALYSIS

### A.  Standard of Review

This Court's review of whether Defendants' actions are in compliance with the ESA and NFMA is governed by the standard set forth in Section 706 of the APA, 5 U.S.C. § 706 (2000). See Friends of the Bow v. Thompson, 124 F.3d 1210, 1217 (10th Cir. 1997) (reviewing NFMA claim); Wyo. Farm Bureau Fed. v. Babbitt, 199 F.3d 1224, 1231 (10th Cir. 2000) (reviewing ESA claim). Section 706 of the APA provides that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
>     (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

With regard to an agency's factual determinations, this standard of review is a deferential one that does not allow the Court to displace the agency's choice between two fairly conflicting views, so long as that choice is supported by substantial evidence. See Wyo. Farm Bureau Fed., 199 F.3d at 1231. In reviewing an agency action to determine whether the agency's reasoning for that action is arbitrary and capricious, the Court considers whether

> the agency . . . relied on factors which Congress [had not] intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

With regard to issues of law on which Congress is silent, the Court defers to an agency's construction if Congress has delegated authority over the subject matter to the agency and the agency's construction is not unreasonable or impermissible. See Wyo. Farm Bureau Fed., 199 F.3d at 1231. If Congress has spoken clearly on the issue, however, the Court gives strict effect to the statutory language without deferring to the agency's interpretation. See id. Further, if an agency action falls short of the standards set forth in Section 706 of the APA, Congress has imposed a mandatory duty on the reviewing court to order the applicable remedy provided therein, including injunctive relief to compel agency action unlawfully withheld or unreasonably delayed. See Forest Guardians v. Babbitt, 174 F.3d 1178, 1187 (10th Cir. 1999).

The Tenth Circuit has further specified that the Federal Rules of Appellate Procedure set forth the appropriate procedural framework for a district court's review of administrative agency actions under Section 706 of the APA. See Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1579-80 (10th Cir. 1994). Under this framework, the district court generally cannot "rely on evidence outside the administrative record" or "the *post hoc* rationalizations of counsel," nor can it "attempt[] itself to supply a reasoned basis for agency action without regard to the contents of the administrative record." Id.

### B. Plaintiff's NFMA Claim

The legal framework applicable to Plaintiff's NFMA claim was previously summarized in the Court's *Memorandum Opinion and Order* [Doc. No. 46] filed on December 31, 2002. In that *Memorandum Opinion and Order*, the Court determined that Defendants USFS and Veneman unreasonably delayed the implementation of their statutory duty to ensure that livestock grazing for the entire term authorized by the 1997 grazing permit is consistent with the Gila National Forest Plan (amended through 1996), as required by NFMA. The Administrative Record reflects that Defendant USFS modified the 1997 grazing permit on June 3, 2003, in response to the Court's *Memorandum Opinion and Order* of December 31, 2002. [AR 61.0.] The timing of this modification roughly coincides with the date that Defendants' response brief was due in this case. [Doc. No. 58, 59, 60, 61, 62.]

Plaintiff continues to claim that Defendant USFS is in violation of NFMA and Section 706 of the APA. In particular, Plaintiff contends that it was unreasonable for Defendant USFS to delay an additional five months after the Court's ruling before issuing the modifications to the permit. Plaintiff also contends that the modifications to the permit issued on June 3, 2003, are not sufficient to achieve consistency with the Gila National Forest Plan as required by NFMA.

The Court agrees that Defendant USFS has unreasonably delayed the implementation of its statutory duties under NFMA with respect to this grazing permit, as previously stated in the Court's *Memorandum Opinion and Order* of December 31, 2002. [Doc. No. 46.] The

fact that Defendant USFS waited more than five additional months to respond to the Court's ruling on this issue lends support to this conclusion.[1]

Nevertheless, the Court determines that the modifications made to the permit on June 3, 2003, are sufficient to satisfy the consistency requirements of NFMA under the circumstances of this case. In this regard, the Court notes that each of the standards from the 1996 amendment to the Gila National Forest Plan that are quoted in the Court's prior *Memorandum Opinion and Order* [Doc. No. 46, at 10, 34 (quoting AR 2.0, at 90, 94)] are now expressly incorporated in the permit [AR 61.0, at 1]. Further, the permit now contains "site-specific forage use levels" developed in consultation with the USFWS [AR 61.0, at 2], as directed in the guidelines for grazing management set forth in the 1996 amendment to the Forest Plan [Doc. No. 46, at 10 (quoting AR 2.0, at 94)]. Finally, the permit modification issued on June 3, 2003, provides a reasoned explanation of why these standards and site-specific forage use levels will achieve consistency with the Forest Plan as amended in 1996. [AR 61.0, at 2-3.] The agency's reasoning is examined in further detail in the discussion of Plaintiff's remaining ESA claims below.

---

[1] However, the Court does not suggest that Defendants' compliance with this prior ruling was expected to be instantaneous. Some delay while Defendants completed the consultation process under Section 7 of the ESA and reviewed the new legislation passed by Congress on February 20, 2003, is understandable. The requirements of NFMA and the ESA are closely intertwined with respect to the Mexican spotted owl because the 1996 amendment to the Forest Plan was specifically undertaken to achieve compliance with the ESA and largely mirrors the Recovery Plan for the owl. See generally Forest Guardians v. United States Forest Serv., No. Civ. 04-11 MCA/RHS (D.N.M. Feb. 4, 2004) (unpublished memorandum opinion and order). Thus, it would be logical to defer finalizing the permit modification until the ESA consultation process for that permit was completed.

C.  **Plaintiff's ESA Claims**

Plaintiff also contends that Defendants acted arbitrarily, capriciously, contrary to law, and in violation of the ESA when they determined that the remaining term of the 1997 grazing permit is not likely to adversely affect the Mexican spotted owl, spikedace, loach minnow, or their critical habitat. According to Plaintiff, the decisions resulting from the agencies' consultation under Section 7 of the ESA ignore the actual condition of the allotment and the watershed in which it is located, as well as the known adverse impacts of livestock grazing on the species in question and their critical habitat. In particular, Plaintiff alleges that Defendants failed to consider changes in stream flows, sediment transport, cumulative impacts on the watershed, overutilization and unauthorized use of certain pastures, and impacts on prey species, fire regimes, and riparian areas on which the Mexican spotted owl depend. According to Plaintiff, proper consideration of these factors inescapably leads to the conclusion that livestock grazing on the Copper Creek Allotment must stop altogether.

Defendants do not deny that significant portions of the Copper Creek Allotment are in unsatisfactory condition with respect to the habitat needs of one or more species listed under the ESA, as reflected in the Administrative Record. Defendants contend, however, that they have imposed certain conservation measures to redress these unsatisfactory conditions as they relate to the livestock grazing authorized by the permit. With the 1997 grazing permit modified to incorporate these specific measures, Defendants contend that the

species in question and their critical habitat are not likely to be adversely affected by livestock grazing.

The Administrative Record contains a series of correspondence between the USFS and the USFWS which shows that the consultation process under Section 7 of the ESA (in conjunction with the permit modification process described in Section II.B above) resulted in the following additional restrictions on livestock grazing in the Copper Creek Allotment:

> 1. Residual stubble heights of at least 4-5 inches on mutton grass (*Poa fendleriana*) and Kentucky bluegrass (*Poa pratensis*) and 6-7 inches on Arizona fescue (*Festuca arizonica*) sites will be maintained in the Indian Creek Pasture. . . .
>
> 2. For the remainder of the allotment, herbaceous forage utilization will be maintained at 35% utilization during the growing season, 40% during the dormant season, and 50% on browse.
>
> 3. Pre-, mid-, and post utilization monitoring will be conducted for each pasture. Monitoring will be conducted prior to cattle entry, midway through the scheduled use, and immediately upon cattle removal.
>
> 4. If minimum stubble heights are exceeded in any given pasture, cattle will be removed from that pasture, and that pasture will receive a subsequent growing season deferment prior to the resumption of grazing.
>
> 5. When monitoring results indicate that all pastures have reached minimum stubble heights, and scheduled deferment cannot be achieved, livestock will be removed from the allotment.

[AR 38.0; 41.0; AR 46.0; AR 50.0; AR 56.0; AR 58.0.] These measures, along with the applicable standards from the 1996 amendment to the Gila National Forest Plan, were incorporated into the terms and conditions of the 1997 grazing permit on June 3, 2003. [AR 61.0.]

The Administrative Record further indicates that, under the protocol set forth in these conservation measures, Defendant USFS ordered all cattle to be removed from Indian Creek pasture by no later than August 9, 2002, and subsequently ordered the removal of all cattle from the entire allotment by no later than June 30, 2003. [AR 51.0; AR 69.0.] The removal of cattle from the Indian Creek pasture in 2002, as well as the requirement that cattle would not be permitted back on that pasture so long as minimum stubble-heights standards are not met, also are acknowledged in the agencies' ESA consultation documents. [AR 56.0; AR 58.0.]

With all of these specific standards and measures in place, the Court determines that Defendants did not act arbitrarily, capriciously, or contrary to law in reaching the conclusion that the 1997 grazing permit (as modified on June 3, 2003) is not likely to adversely affect the Mexican spotted owl, spikedace, loach minnow, or their critical habitat. For these reasons, the permit modification of June 3, 2003 [AR 61.0], as well as the results of the ESA consultation process completed on February 27, 2003 [AR 56.0; AR 58.0], are affirmed.

The Court notes the existence of data in the Administrative Record indicating that significant portions of the Copper Creek Allotment are in unsatisfactory condition with respect to the habitat needs of the species in question, and that this unsatisfactory condition may have resulted, at least in part, from historical livestock grazing practices on the allotment prior to the implementation of the current conservation measures. If the agencies'

decision was simply to continue the historical grazing practices that existed before Plaintiff filed this action, this data would take on greater relevance. Such is not the case here.

The Administrative Record reflects that Defendants did not decide to simply continue historical grazing practices on the allotment. Rather, Defendants decided to require more careful control of livestock grazing practices in accordance with the standards and measures incorporated in the permit on June 3, 2003. Thus, the focus of the Court's review is on whether Defendants acted arbitrarily, capriciously, or contrary to law in deciding that livestock grazing under these more restrictive requirements is not likely to adversely affect the protected species or their habitat during the remaining term of the permit (which expires in 2006). This decision does not rely exclusively on raw data regarding past conditions on the allotment or the adverse effects of historical grazing practices; it also relies on agency expertise in the development of site-specific forage use levels and the prediction of what effect these new measures will have on the allotment and the surrounding watershed in the future.

Plaintiff have presented the opinions of their own experts regarding the development of site-specific forage-use levels and the prediction of the future effects such conservation measures may have on the species in question. [Doc. No. 57.] Under the standard of review provided in Section 706 of the APA, however, the Court must defer to the agencies' choice between conflicting views regarding these subjects, so long as that choice is supported by substantial evidence. See Wyo. Farm Bureau Fed., 199 F.3d at 1231. In this case, the

guidelines for grazing management set forth in the 1996 amendment to the Gila National Forest Plan specifically call for the development of site-specific forage-use levels in consultation with the USFWS [AR 2.0, at 94], and the levels chosen by the agencies are supported by substantial evidence in the Administrative Record [AR 38.1; AR 63.0; AR 64.0; AR 65.0]. Cf. Forest Guardians v. United States Forest Serv., Nos. CIV-00-490 JP/RHS & CIV-00-1240 JP/RHS (consolidated), slip. op. at 48 (D.N.M. Apr. 14, 2003) (affirming the use of a 4-inch cover height requirement).

The Administrative Record further reflects that, as a result of the standards and measures incorporated in the permit on June 3, 2003, and in the annual operating instructions for this permit, Defendant USFS ordered all cattle to be removed from the allotment so the pastures can be rested for a significant period. [AR 51.0; AR 69.0.] It is logical to conclude that livestock grazing is not likely to adversely affect the species at issue when no cattle are permitted to graze on the allotment because the existing standards and measures incorporated in the permit and its annual operating instructions have not been met. It is also logical to employ standards and measures (such as forage-use levels and stubble-height measurements) which allow the agencies to account for, and adjust to, natural events beyond their control (such as fire, flood, and drought), rather than relying on an all-or-nothing approach in which the cattle are either permitted or removed from the allotment for the entire duration of the permit without regard to such events.

In response to Defendants' claim that the cattle were removed from the allotment, Plaintiff points to evidence in the Administrative Record that some cattle continued to be found in the Indian Creek pasture after the USFS ordered their removal. [AR 45.0; AR 49.0; AR 51.0; AR 52.0; AR 54.0.] If true, this evidence might provide cause for the USFS to decide whether enforcement action is warranted against the permittee or other owners of trespass cattle. But the agency's decision about whether or not such enforcement action should be taken is not the subject of judicial review in this case. Rather, this Court's review is limited to Defendants' decision to issue the permit in its current modified form in accordance with their determinations under the ESA consultation process and their statutory duties under NFMA. As the decision under review at this stage of the litigation is not arbitrary, capricious, or contrary to law, the Court has no basis to hold it unlawful or set it aside under Section 706 of the APA. 5 U.S.C. § 706.

## III.  CONCLUSION

As previously stated in the Court's *Memorandum Opinion and Order* of December 31, 2002 [Doc. No. 46], Defendants USFS and Veneman unreasonably delayed the implementation of their statutory duties under NFMA and Section 7 of the ESA with respect to the 1997 grazing permit for the Copper Creek Allotment.[2] After that *Memorandum*

---

[2] In their *Memorandum in Support of Second Motion for Review of Agency Action* [Doc. No. 56], Plaintiffs request that the Court set a briefing schedule on the issue of awarding attorney fees and costs. The Court finds it unnecessary to do so at this juncture because the applicable statutes and rules already provide appropriate deadlines for filing such post-judgment motions. See, e.g., 28 U.S.C. § 2412(d); Fed. R. Civ. P. 54; D.N.M. LR-Civ. 54.

*Opinion and Order* was issued and Plaintiff filed the opening brief on their *Third Amended Complaint*. Defendants finally completed the consultation process for the permit under Section 7 of the ESA and modified the permit to achieve consistency with the Gila National Forest Plan as amended in 1996. The Court now affirms the permit modifications issued on June 3, 2003 [AR 61.0], as well as Defendants' determinations under Section 7 of the ESA regarding the remaining term of this modified permit [AR 56.0, 58.0].

**IT IS, THEREFORE, ORDERED** that the additional relief requested in Plaintiff's *Memorandum in Support of Second Motion for Review of Agency Action* [Doc. No. 56] is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 31st day of March, 2004, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge